UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| DARRYL LATHAN, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:16-CV-147 |
| § | |
| WILLIAM STEVENS, *et al*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND RECOMMENDATION
TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE**

This case was filed as a civil rights action by a Texas state prisoner pursuant to 42 U.S.C. § 1983.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. *Ruiz v. United States*, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam), *cert. denied*, 527 U.S. 1041 (1999). Plaintiff's *pro se* complaint must be read indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that the Court retain Plaintiff's Eighth Amendment claims against Major Alsobrook and Ms. Gaitan, alleging that these defendants were deliberately indifferent to his health and safety when they assigned him to work in the garment factory and to live on the second floor despite his serious mobility issues. It is further recommended the Court retain Plaintiff's claims against the Texas Department of Criminal Justice where he alleges the Department refused to accommodate his disabilities in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A), and the Rehabilitation Act (RA), 29 U.S.C. § 794.

It is further recommended that Plaintiff's 1983 claim against the TDCJ-CID Director, formerly William Stephens and now Ms. Lorie Davis, be dismissed for failure to state a claim because there is no supervisor liability in section 1983 cases. Plaintiff failed to allege any personal involvement by Ms. Davis or her predecessor, and Plaintiff testified he agrees to the dismissal of his 1983 claim against Ms. Davis.

**I.    JURISDICTION.**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

**II.    PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS.**

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and he is currently confined at the McConnell Unit (MCU) in Beeville, Texas. Plaintiff is serving a six-year sentence for sexual assault entered in Denton County, Texas.

On May 6, 2016, Plaintiff filed his original complaint alleging deliberate indifference to his serious medical needs and named the following individuals as defendants: (1) Lorie Davis,[1] TDCJ-CID Director; (2) Major M. Alsobrook; and (3) Ms. K. Gaitan, Chief of Classification. (D.E. 1, p. 3).

A *Spears*[2] hearing was conducted on May 25, 2016. The following allegations were made in Plaintiff's original complaint or at the hearing.

In January 2013, Plaintiff entered the TDCJ-CID and underwent his initial medical screening and evaluation at the Gurney Unit. Plaintiff is 6'1" and weights approximately 300 pounds. He has vascular problems and a stent in one leg. He has back problems from a prior gunshot injury. At screening, Plaintiff was wearing knee supports and walking with a cane. Plaintiff tried to tell the medical screeners that his left knee had bothered him "all of his life" and that he had undergone arthroscopic surgery on his left knee for a torn meniscus. Plaintiff also has problems with both hips and with his right knee. He was declared disabled by the Social Security Administration on June 5, 2012. On Plaintiff's Health Summary Form (HSM-18), Plaintiff was given the following restrictions: (1) bottom bunk only; (2) no uneven floors; (3) no slippery floors; (4) cane pass.

On April 29, 2014, Plaintiff arrived at the MCU and went before a Unit Classification Committee (UCC) which included Major Alsobrook, Ms. Gaitan, and an

---

[1] Plaintiff actually named William Stephens, the former TDCJ-CID Director, but agreed to the substitution of Ms. Lorie Davis, the current TDCJ-CID Director.
[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996)(stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

unidentified captain for purposes of evaluating Plaintiff's ability to work and to determine his proper housing assignment. Plaintiff entered the UCC meeting walking with a cane and wearing knee supports on both knees. Major Alsobrook reportedly told Plaintiff that he was not going to "play games" anymore and was going to have a job. Plaintiff attempted to describe his disabling impairments to the UCC members, but he was not given the opportunity to do so. Plaintiff believes he was intentionally discriminated against because of his disabilities. Following the meeting, Plaintiff was given a housing assignment on the second floor and given a job in the garment factory.

On May 5, 2014, Plaintiff was unable to make it on time to his first day at work at the garment factory and they locked the doors when he arrived late, thus missing his first day of work. Plaintiff was told if he missed work again, he would get a disciplinary case. On May 6, 2014, Plaintiff was rushing to get to the garment factory before they locked the doors and, as he was walking down the stairs, one of his knees buckled causing him to fall and further injure his back. He also hurt his head when it struck the floor. Plaintiff was taken to the medical department for his injuries.

Approximately one week later, Plaintiff was moved to first floor housing and his job was changed to accommodate his medical condition. Plaintiff now uses a walker to ambulate.

## III.  LEGAL STANDARD.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a section 1983 claim, the plaintiff must prove that a person acting under the

color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted. 42 U.S.C. § 1997e(c)(2). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. *Id.*

## IV. DISCUSSION.

### A. Eleventh Amendment Immunity.

Plaintiff is suing defendants in their official and individual capacities. (D.E. 1, p. 4). To the extent Plaintiff has sued any defendant in his official capacity for monetary damages, those claims are effectively claims against the State of Texas itself and are barred by the Eleventh Amendment. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official capacities. *See Oliver*, 276 F.3d

at 742, (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent Plaintiff is suing defendants for injunctive relief to enjoin them from assigning other disabled prisoners to jobs beyond their capabilities, Plaintiff, as a non-lawyer, cannot represent a class or *pro se* plaintiffs with similar claims.  *See Anderson v. Moore,* 372 F.2d 747, 751, n.5 (5th Cir. 1967) (noting that the competence of a layman representing himself is clearly too limited to allow him to risk the rights of others); *see also Caputo v. Fauver*, 800 F. Supp. 168, 170 (D.N.J. 1992) ("Every court that has considered the issue has held that a prisoner proceeding *pro se* is inadequate to represent the interests of his fellow inmates in a class action.").  To the extent Plaintiff is simply seeking injunctive relief for himself, the named defendants would be the proper TDCJ officials to order such relief.  If not, the usual practice of the TDCJ is to designate the appropriate official to file an answer or otherwise appear.

### B.   Supervisory liability under section 1983.

Plaintiff has named TDCJ-CID Director Ms. Lorie Davis as a defendant.  Plaintiff testified that Ms. Davis is not associated with the daily operations of the MCU, nor has Plaintiff ever spoken with her personally.  Plaintiff testified that Ms. Davis should be held liable for his injuries for failure to train Major Alsobrook and Ms. Gaitan on how to do their jobs.

Vicarious liability does not apply to section 1983 claims.  *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009) (government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*).

6 / 13

Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability; the doctrine of *respondeat superior* does not apply to such actions. *Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (under section 1983, a government official may be held liable solely for his own conduct). Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under section 1983. *See Jones v. Lowndes County, Miss.,* 678 F.3d 344, 349 (5th Cir. 2012) ("A section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'"); *Zarnow v. City of Wichita Falls, Tex.,* 614 F.3d 161, 169 (5th Cir. 2010) ("To support a supervisory liability claim, the misconduct of a subordinate must be conclusively linked to the action or inaction of the supervisor.").

Generally, a supervisor may be held liable only if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation, such as where the supervisor implemented or enforced unconstitutional policies which actually resulted in plaintiff's injuries. *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011). A supervisor may be held personally liable for inadequate supervision or a failure to train subordinates only where the failure to train or supervise amounts to deliberate indifference and is a proximate cause of a constitutional violation. *See id.,* 659 F.3d at 446 (A supervisor may also be liable for failure to supervise or train if: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of plaintiff's rights; and (3) the failure to

train or supervise amounts to deliberate indifference.).  Merely negligent or incompetent supervision cannot form a basis for liability under section 1983; the supervisor's actions or inactions must rise to the level of "deliberate indifference." *Id.*

In his original complaint, Plaintiff alleged that Director Stephens, now Director Davis, failed to protect Plaintiff by failing to train his/her administrative staff to house Plaintiff properly.  However, Plaintiff does not suggest that defendants Gaitan and Alsobrook failed to follow procedure.  He admits that a Unit Classification Committee (UCC) was conducted and that his Health Summary Form was consulted.  He offers no facts to suggest that Director Stephens or Davis failed to follow TDCJ procedure.  Therefore, it is respectfully recommended that Plaintiff's claim against the TDCJ-CID Director be dismissed with prejudice.

C.   **Deliberate indifference to serious medical needs.**

Plaintiff claims that UCC members Gaitan and Alsobrook were deliberately indifferent to his serious medical needs because they were able to observe his disabling conditions at the UCC, yet still assigned him to second floor housing and to a strenuous job in the garment factory.

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII. Prison officials must provide humane conditions of confinement, ensure that inmates receive adequate food, clothing, shelter, and medical care, and take reasonable measures to guarantee the safety of the inmates.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate

the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992). Such a violation occurs when a prison official is deliberately indifferent to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Deliberate indifference is more than mere negligence. *Id.* at 835. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Id.* at 837.

When Plaintiff entered the TDCJ-CID, he had already been declared disabled by the Social Security Administration due to back, neck, and knee problems. However, he does not claim that he was classified as medically unassigned when evaluated at the Gurney Unit. Plaintiff testified that he walked with a cane and had braces on both knees when he appeared before the UCC panel, yet Major Alsobrook allegedly told him the "games" were going to stop and he was going to work, and Ms. Gaitan approved the second floor housing and garment factory job. The fact that, one week later, Plaintiff fell while trying to navigate the stairs and was seriously injured, is some evidence that defendants did not seriously consider Plaintiff's disabilities in making his job and housing classifications, in violation of his constitutional rights.

### D. Duties under the Americans with Disabilities Act and Rehabilitation Act.

Construing Plaintiff's complaint liberally, Plaintiff alleges that the failure of Defendants to properly house him or to assign him to a suitable job within the scope of

his disabilities amounts to a refusal to accommodate his disabilities in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A), and the Rehabilitation Act (RA), 29 U.S.C. § 794.  While Plaintiff did not separately name the Texas Department of Criminal Justice as a defendant, the Department is the appropriate defendant for these claims.  *See McCoy v. Tex. Dep't Crim. Justice*, 2006 WL 2331055 (S.D. Tex. Aug. 9, 2006).  The ADA and the RA provide that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also* 29 U.S.C. § 794(a).  Under the ADA and RA, discrimination effectively means failure to provide a reasonable accommodation to the needs of the disabled person.  *Melton v. Dallas Area Rapid Transit,* 391 F.3d 699,  672 (5th Cir. 2004).  That is, by failing to accommodate for the disability of the disabled person, the defendant has effectivity discriminated against the person.  *Tennessee v. Lane,* 541 U.S. 509, 531 (2004) (Congress recognized "that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion" or discrimination).

In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners.  *See United States v. Georgia,* 546 U.S. 151, 160 (2006) (allegations, if true, that defendant refused to provide a reasonable accommodation to a paraplegic inmate, "in such fundamentals as mobility, hygiene,

medical care," resulted in the disabled inmate suffering serious punishment "without penal justification") and supported a claim under section 1983, as well as the ADA and RA.

In this case, Plaintiff has presented sufficient facts for purposes of section 1915A screening to state claims under the Eighth Amendment, as well as the ADA and RA. Plaintiff testified that he was determined to be disabled by the Social Security administration prior to entering the TDCJ, and he entered walking with a limp and wearing knee braces. Defendants Alsobrook and Gaitan both had the opportunity to observe Plaintiff's knee braces and slow gait, but they appear to have ignored the evidence of his disabilities and made no attempt to accommodate his disabling conditions until after he fell and further injured himself. These facts state claims under section 1983, the ADA, and RA, and it is respectfully recommended that the Court retain these claims.

## V.     RECOMMENDATION.

For the reasons stated above, it is respectfully recommended that Plaintiff's Eighth Amendment claims against Major Alsobrook and Ms. Gaitan in their individual capacities be retained and service ordered on these individuals. To the extent Plaintiff is seeking injunctive relief for himself only, it is respectfully recommended that those claims remain against Alsobrook and Gaitan in their official capacities only. It is further recommended the Court retain Plaintiff's claims against the Texas Department of Criminal Justice in which he alleges the Department refused to accommodate his disabilities in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §

12112(b)(5)(A), and the Rehabilitation Act (RA), 29 U.S.C. § 794. It is further recommended that Plaintiff's section 1983 claims against Director Stephens/Director Davis be dismissed for lack of personal involvement and for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully submitted this 8th day of July, 2016.

_____
Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).