UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DARRYL LATHAN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-147 |
| | § | |
| WILLIAM STEVENS, *et al*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND RECOMMENDATION
### TO DENY DEFENDANT TDCJ'S MOTION TO DISMISS

In this prisoner civil rights action, Plaintiff Darryl Lathan alleges that: (1) Defendants Major M. Alsobrook and K. Gaitan were deliberately indifferent to his health and safety in violation of the Eighth Amendment; and (2) the Texas Department of Criminal Justice ("TDCJ") refused to accommodate his disabilities in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A), and the Rehabilitation Act (RA), 29 U.S.C. § 794. Pending is the TDCJ's Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. 45). For the reasons stated herein, it is respectfully recommended that the TDCJ's motion be **DENIED**.

I.   **JURISDICTION**

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.  This case was referred to the undersigned United States Magistrate Judge for case management and to furnish a recommendation pursuant to 28 U.S.C. § 636.[1]

II.   **PROCEDURAL BACKGROUND**

Plaintiff is a former prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently residing at the Dallas Transitional Center in Dallas Texas, Texas.  Plaintiff is serving a six-year sentence for sexual assault entered on June 6, 2012, in Denton County, Texas.

Plaintiff's allegations in this case arise in connection with his confinement at the McConnell Unit in Beeville, Texas.  On May 6, 2016, Plaintiff filed his original complaint, naming the following individuals as defendants: (1) Lorie Davis,[2] TDCJ-CID Director; (2) Major Alsobrook; and (3) Ms. Gaitan, Chief of Classification.  (D.E. 1, p. 3).  Plaintiff alleges that Defendants Alsobrook and Gaitan were deliberately indifferent to his health and safety when they assigned Plaintiff to work in a garment factory and to live on the second floor despite his serious mobility issues.  Plaintiff alleges further that the failure to properly house him and assign him to a suitable job within the scope of his disabilities amounts to a refusal to accommodate his disabilities in violation of the ADA and RA.

---

[1] *See* Special Order C-2015-01 on file with the District Clerk.
[2] In his original complaint, Plaintiff named William Stephens, the former TDCJ-CID Director, as a defendant. Plaintiff, however, agreed to the substitution of Lorie Davis, who is the current TDCJ-CID Director.

On May 25, 2016, a *Spears*[3] hearing was conducted. On July 8, 2016, the undersigned issued a Memorandum and Recommendation (July 8, 2016 M&R), recommending that the Court: (1) retain Plaintiff's Eighth Amendment claims against Defendants Alsobrook and Gaitan in their individual capacities; (2) retain Plaintiff's Eighth Amendment claims against Defendants Alsobrook and Gaitan in their official capacities only to the extent that Plaintiff seeks injunctive relief for himself only; (3) retain Plaintiff's ADA and RA claims against the TDCJ as the appropriate defendant for these claims; and (4) dismiss Plaintiff's § 1983 claims against Director Davis "for lack of personal involvement and for failure to state a claim and/or as frivolous . . . ." (D.E. 8). The M&R remains pending before the District Judge.

The undersigned ordered service on Defendants Alsobrook, Gaitan, and the TDCJ. (D.E. 9). On August 24, 2016, Defendants Alsobrook, Gaitan, and the TDCJ filed a partial motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (D.E. 12). Defendants moved to dismiss Plaintiff's claims for injunctive relief because his medical needs had been accommodated through an assignment to a first-floor housing unit and a change in his job assignment. (D.E. 12, p. 4). The motion was unopposed by Plaintiff, therefore, the undersigned granted Defendants' partial motion to dismiss and dismissed Plaintiff's claims for injunctive relief against them. (D.E. 19, p. 3). The undersigned further stated that the following claims remained pending: (1) Plaintiff's deliberate indifference claims for money damages against

---

[3] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

Defendants Alsobrook and Gaitan in their individual capacities; and (2) Plaintiff's ADA and RA claims for money damages against the TDCJ.

On March 1, 2017, Defendants Alsobrook and Gaitan filed a motion for summary judgment seeking dismissal of Plaintiff's deliberate indifference claims. (D.E. 30). On August 7, 2017, the undersigned issued a Memorandum and Recommendation (August 7, 2017 M&R), recommending that this summary judgment be granted on the basis that: (1) Plaintiff failed to exhaust his administrative remedies as to his deliberate indifference claims; and (2) in the alternative, Defendants Alsobrook and Gaitan are entitled to qualified immunity. (D.E. 41).

With respect to Plaintiff's ADA and RA claims, the undersigned ordered the TDCJ to file an answer in this case. (D.E. 43). On August 25, 2017, the TDCJ filed a Rule 12(b)(6) Motion to Dismiss. (D.E. 45). Plaintiff subsequently filed its response on September 25, 2017. (D.E. 51).

### III. PLAINTIFF'S ALLEGATIONS

Plaintiff made the following allegations relevant to the pending motion to dismiss in his Original Complaint or at the *Spears* hearing.

Plaintiff testified that he is 6'1" and weighs approximately 300 pounds. He has vascular problems, a stent in one leg, and back problems. In January 2013, Plaintiff entered the TDCJ-CID and underwent his initial medical screening and evaluation at the Gurney Unit. At his initial screening, Plaintiff was wearing knee supports and walking with a cane. Plaintiff tried to tell the medical screeners that his left knee had bothered him "all of his life" and that he had undergone arthroscopic surgery on his left knee for a

torn meniscus. Plaintiff also has problems with both hips and with his right knee. He was declared disabled by the Social Security Administration (SSA) on June 5, 2012.

On April 29, 2014, Plaintiff arrived at the McConnell Unit and appeared before a Unit Classification Committee (UCC), which included Major Alsobrook, Ms. Gaitan, and an unidentified captain for purposes of evaluating Plaintiff's ability to work and to determine his proper housing assignment. Plaintiff entered the UCC meeting walking with a cane and wearing knee supports on both knees. Major Alsobrook reportedly told Plaintiff that he was not going to "play games" anymore and was going to have a job. Plaintiff attempted to describe his disabling impairments to the UCC members, but he was not given the opportunity to do so. Following the meeting, Plaintiff was given a housing assignment on the second floor and given a job in the garment factory.

On May 5, 2014, Plaintiff was unable to make it on time to his first day at work at the garment factory, and they locked the doors when he arrived late, thus missing his first day of work. Plaintiff was told if he missed work again, he would get a disciplinary case. On May 6, 2014, Plaintiff was rushing to get to the garment factory before they locked the doors and, as he was walking down the stairs, one of his knees buckled causing him to fall and further injure his back. He also hurt his head when it struck the floor. Plaintiff was taken to the medical department for his injuries.

Approximately one week later, Plaintiff was moved to first floor housing, and his job was changed to accommodate his medical condition. Plaintiff now uses a walker to ambulate.

## IV. LEGAL STANDARD.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face*.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## V. DISCUSSION

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, under the RA, "[n]o qualified individual

6 / 12

with a disability . . . shall, solely by reason of her or his such disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 29 U.S.C. § 794(a).

"The RA is operationally identical to the ADA in that both statutes prohibit discrimination against disabled persons; however, the ADA applies only to public entities while the RA applies to any federally funded programs or activities, whether public or private." *Borum v. Swisher County*, No. 2:14-CV-127-J, 2015 WL 327508, at *3 (N.D. Tex. Jan. 26, 2015) (citing *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010)). Courts utilize the same standards in analyzing claims under both the ADA and RA. *See Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011). The undersigned, therefore, will analyze Plaintiff's ADA and RA claims as though they were raised as a single claim. *See Borum*, 2015 WL 327508, at *3.

To establish a valid claim under Title II of the ADA, a plaintiff must show that (1) he is a qualified individual with a disability within the meaning of the ADA; (2) he was excluded from participation or denied meaningful access to services, programs, and activities, or that he was otherwise discriminated against by defendants; and (3) such exclusion, denial of benefits, or discrimination is by reason of his disability. *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir. 1997). The Supreme Court has held that Title II of the ADA applies to state prison facilities and state prison services. *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998).

Under the ADA and RA, discrimination effectively means failure to provide a reasonable accommodation to the needs of the disabled person. *Melton v. Dallas Area*

*Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004). That is, by failing to accommodate for the disability of the disabled person, the defendant has effectivity discriminated against the person. *Tennessee v. Lane,* 541 U.S. 509, 531 (2004) (Congress recognized "that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion" or discrimination). The Fifth Circuit has held that a prison's failure to satisfy the reasonable accommodation requirement may constitute a denial of services or benefits as well as intentional discrimination sufficient to satisfy the second and third prongs of the Title II ADA inquiry. *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014).

In the prison context, failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoners. *See United States v. Georgia,* 546 U.S. 151, 160 (2006) (recognizing prisoner's allegations that defendant refused to provide a reasonable accommodation to a paraplegic inmate, "in such fundamentals as mobility, hygiene, medical care," resulted in the disabled inmate suffering serious punishment "without penal justification" and supported claims under the ADA and RA).

The ADA provides that "[a] State shall not be immune under the Eleventh Amendment ... from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. The Supreme Court has accepted this statement as an unequivocal expression of Congress's intent to abrogate state sovereign immunity. *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citation omitted).

However, the Court in *Georgia* held open the question of whether Congress's abrogation of sovereign immunity is valid with respect to conduct that arguably violates the ADA, but does not violate the Constitution. *Georgia*, 546 U.S. at 159, 160 n. * ("Title II prohibits 'a somewhat broader swath of conduct than the Constitution itself forbids.'") (citation omitted). Because Title II prohibits a wider range of activities than the Constitution, the Supreme Court held that courts are to determine the following on a claim by claim basis:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such conduct also violated the Fourteenth Amendment [or Constitution]; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment [or Constitution], whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* at 159.

In this case, Plaintiff alleges that the TDCJ's failure to properly house him or to assign him to a suitable job within the scope of his SSA-determined disabilities amounted to a refusal to accommodate in violation of the ADA and the RA. The TDCJ contends in its Motion to Dismiss that Plaintiff has failed to state an ADA or RA claim because he cannot show he was excluded from participating in any program or benefit. (D.E. 45, p. 5). Assuming Plaintiff was denied a benefit, the TDCJ further contends that such denial was not due to his disability. (D.E. 45, p. 5). Plaintiff responds by simply stating that he does not want his claims to be dismissed. (D.E. 51).

In the August 7, 2017 M&R, the undersigned recommended that Defendants Alsobrook and Gaitan be granted summary judgment with regard to Plaintiff's Eighth Amendment claim involving the same events at issue in connection with his ADA and RA claims. (D.E. 41). However, as stated above, Title II of the ADA prohibits a wider range of activities than under the Eighth Amendment. *See Georgia*, 546 U.S. at 159, 160 n. *.

In this case, Plaintiff believed he was the victim of intentional discrimination because of his disabilities. Plaintiff testified that he was determined to be disabled by SSA before entering the TDCJ and that he entered into TDCJ custody walking with a limp and wearing knee braces. Members of the UCC panel, including Defendants Alsobrook and Gaitan, had the opportunity to observe Plaintiff's knee braces and slow gait at his April 29, 2014 meeting. Plaintiff's allegations indicate, however, that the UCC panel: (1) failed to consider evidence of Plaintiff's disabilities; and (2) took no action to accommodate or otherwise consider Plaintiff's disabling conditions when making housing and job assignments that required him to navigate a flight of stairs. Plaintiff further alleged that appropriate accommodations were then made *after* Plaintiff fell and injured himself on the stairs. Accepted as true, Plaintiff's allegations successfully state plausible claims for relief under the ADA and RA.[4]

---

[4] The TDCJ offers no argument in its Motion to Dismiss to assert an entitlement to Eleventh Amendment immunity with regard to Plaintiff's ADA claim. The TDCJ is free to raise this issue on summary judgment following discovery on Plaintiff's ADA claim.

## VI. RECOMMENDATION.

For the foregoing reasons, it is respectfully recommended that Defendants' Motion to Dismiss (D.E. 45) be **DENIED**. It is respectfully recommended further that the Court also adopt the undersigned's July 8, 2016 M&R and August 7, 2017 M&R.

Respectfully submitted this 20th day of October, 2017.

                                        Jason B. Libby
                                United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).